Philip C. Monrad (State Bar No. 151073)
Aaron Kaufmann (State Bar No. 148580)
LEONARD CARDER, LLP
1330 Broadway, Suite 1450
Oakland, CA 94612
Tel: (510) 272-0169
Fax: (510) 272-0174
Email: pmonrad@leonardcarder.com
Email: akaufmann@leonardcarder.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISETTE ADAMS, GRANVILLE MCCOLLOUGH and PATRICK TUOHY<br><br>Plaintiffs,<br><br>vs.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO and THE CITY AND COUNTY OF SAN FRANCISCO SHERIFF'S DEPARTMENT<br><br>Defendant. | Case No. 4:13-CV-04689-YGR<br><br>**STIPULATION RE: APPROVAL OF SETTLEMENT AGREEMENT AND DISMISSAL WITH PREJUDICE AND [PROPOSED] ORDER THEREON**<br><br>Compliance Hearing: April 15, 2016<br>9:01 A.M.<br>Courtroom: 1, 4th Floor<br>Courthouse: Oakland |

**STIPULATION**

Plaintiffs and Defendant, by and through their counsel stipulate as follows:

**Procedural History**

1. Plaintiffs Lisette Adams, Patrick Tuohy and Granville McCullough filed this lawsuit on October 9, 2013, against the City and County of San Francisco ("City"), alleging the following Claims For Relief: (1) Failure to pay FLSA overtime (29 U.S.C, §§ 207, 216(b), 255(a); (2) Failure to pay California minimum wage (Labor Code §§ 1182.11, 1194, IWC Wage Order 4) and (3) Failure to pay San Francisco minimum wage (S.F. Admin. Code § 12R.2).  The extant Complaint is Plaintiffs' First Amended Complaint, filed on November 1, 2013.  ECF Dkt. No. 11.

2. Plaintiffs' claims for relief are based on Plaintiffs' allegations that they were not paid, or not paid properly for time spent in pre-shift "muster time," "muster" preparation time, pre-shift meeting preparation time, post-shift conference time and time spent donning and doffing uniforms and equipment.

3. Plaintiffs filed the FLSA overtime claim for relief as an "opt-in" collective action under 29 U.S.C. § 216(b), on behalf of similarly situated San Francisco Sheriff's Supervisors in the classification of Sheriff's Sergeants, Captains, Lieutenants and Chief Deputy Sheriffs.

4. Plaintiffs filed the California and San Francisco minimum wage claims as putative class actions under Federal Rules of Civil Procedure Rule 23 on behalf of the same class.

5. Seventy-one (71) members of the collective action class executed and filed individual Consent[s] To Become Party Plaintiff[s] to the FLSA action ("Opt-In forms") between October 9, 2013 and August 28, 2014. *See* ECF Dkt. No. 69.  These members are deemed "Early Consenters" in the instant Settlement Agreement ("Agreement."), as explained below. In addition, collective action member Teri Tussey submitted to plaintiffs' counsel an executed Opt-In form during this period, but through no fault of Ms. Tussey, her Opt-In form was not filed. The parties have agreed to treat her for purposes of this Agreement as an "Early Consenter" and her executed Opt-In form (coupled with her Release) is included in Exhibit F to the Agreement. Accordingly, there are 72 Early Consenters subject to this Agreement.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

6. Thirty-one (31) members of the collective action class executed Opt-In forms in October, 2015, after the terms of this Agreement were initially agreed to, as explained below. These members are deemed "Late Consenters."

7. Plaintiffs promulgated written discovery on the City, and in response the City produced, under Protective Order, many thousands of pages of documents including payroll and staffing assignment records for the relevant period.

8. On June 3, 2014, with the Court's permission, Plaintiffs filed an early summary judgment motion for partial summary judgment, and both parties extensively briefed this motion. ECF Dkt. No. 48, *et seq*. Plaintiffs' motion sought summary adjudication that the California and San Francisco minimum wage requirements applied to the City, and responded to the City's position that it is not subject to the penalties sought in Plaintiffs' First Amended Complaint.

9. On August 11, 2014, with the Court's permission, Plaintiffs withdrew this summary judgment motion without prejudice to refiling (ECF Dkt No's 58, 59), while they pursued settlement negotiations with Magistrate Judge Jacqueline Scott Corley. ECF Dkt. No's 60, 62.

10. The parties then participated in a series of extensive settlement conferences with Magistrate Corley, in person with parties present, and in telephone conferences with counsel. At these settlement conferences, both parties submitted detailed calculations from their respective retained economics experts, presenting their respective positions on the range of potential damages that Plaintiffs could potentially recover (or not) depending on whether they prevailed or failed to prevail on different combinations of Plaintiffs' Claims for Relief.

11. In light of delay in reaching settlement, Plaintiffs resubmitted their summary judgment motion on July 7, 2015, updating this motion to reflect changes in governing law since their initial motion was filed on June 30, 2014. ECF Dkt. No. 97.

12. With the aid of Magistrate Judge Corley, the parties reached agreement on the basic terms of a settlement agreement on July 7, 2015. ECF Dkt. No. 96, pursuant to which Plaintiffs withdrew their summary adjudication motion. ECF Dkt. No. 100.

13. The parties then negotiated the final details of the Agreement, with counsel for Plaintiffs and the City executing the agreement approved as to form on October 13, 2015.

- 3 -
STIP/ORDER APPROVING SETTLEMENT & DISMISSING CLAIMS        Case No. 4:13-cv-04689-YGR

14. As provided by the Agreement, Plaintiffs timely submitted to the counsel for the City, "Settlement Agreement Consent[s] and Release[s]" individually executed by each of the 103 members of the collective action class who had either previously submitted Opt-In forms (Early Consenters), or who did so by executing this "Settlement Agreement Consent and Release (Late Consenters). As discussed further below, these Settlement Agreement Consent[s] and Release[s] waived and released all claims by the individual signer that were or could be claimed based on the allegations in the complaint for all periods of time prior to July 8, 2015.

15. Counsel for the City submitted the proposed Agreement to the City Board of Supervisors with these individually executed Settlement Agreement Consent[s] and Release[s]. The Board of Supervisors enacted an Ordinance approving the Settlement Agreement on March 15, 2016.

16. On March 25, 2016, Mayor Edwin Lee signed Ordinance No. 40-16 authorizing the City Attorney to settle this lawsuit for $1,300,000.00. A true and correct copy of Ordinance No. 40-16 is attached hereto as Exhibit 1.

17. A true and correct copy of the Agreement is attached hereto as Exhibit 2, including Exhibits A through F to the Agreement. Exhibit A to the Agreement is a merged list of all Early Consenters and Late Consenters who will recover under the Agreements, specifying each of their Final Settlement Shares. Exhibit B to the Agreement is a list of all Early Consenters. Exhibit C to the Agreement is a list of all Late Consenters. Exhibit D to the Agreement is the Notice that was sent to all Early Consenters and potential Late Consenters giving notice of and explaining the terms of the Agreement. Exhibit E is an agreement between the labor union that represents Sheriffs Supervisors and the City, agreeing to resolve the primary claims at issue in this litigation by arbitration, for all periods after July 7, 2015. Exhibit F includes 103 Settlement Agreement Consent and Releases executed by each of the Early Consenters and Late Consenters who will recover under this settlement. These Settlement Agreement and Releases are individualized for each signer in that they state the Minimum Settlement Share that the signer will recover under the Agreement, as explained below, and as reflected in Exhibit A to the Agreement.

**TERMS OF THE AGREEMENT**

18. The Agreement provides that the City will pay $1,300,000.00 to resolve this matter, as detailed below, in exchange for the individually executed "Settlement Agreement Consent and Release" forms executed by the 103 Early Consenters and Late Consenters, attached as Exhibit F to the Agreement. *See* Agreement, ¶ 1.

   A. $\underline{1,035,000.00}$ will be paid to the 103 Early and Late Consenters who executed the Settlement Agreement Consent and Release forms attached as Exhibit F to the Agreement, as explained more fully below.

   B. $\underline{250,000.00}$ will be paid to Plaintiffs' counsel as attorneys fees and costs.

   C. $\underline{5,000.00}$ will be paid as a service award to each of the three named lead Plaintiffs who initiated this lawsuit, Lisette Adams, Patrick Tuohy and Granville McCollough.

   Release of Claims

19. Paragraph 3 of the Agreement sets out in 6 subsections the scope of the release of claims that the City receives in this Agreement in consideration for the $1,300,000.00 Settlement Amount. To summarize, the Early and Late Consenters who recover under this Agreement each individually release the City from any and all claims known or unknown which arise out of the claims in this action, or which could be asserted based upon the facts alleged in this Action for any period of time up to and including – but not beyond – July 7, 2015.

20. Each Early Consenter and Late Consenter recovering under this Agreement executed a Settlement Agreement Consent and Release which agrees to all the terms and conditions of the Agreement. (Exh. F to Agreement.) Expressly included in each Settlement Agreement Consent and Release is the following language:

> By signing below, I agree to forever settle and release my claims for compensation, including overtime compensation under the Fair Labor Standards Act which were asserted in the Action and under the California Labor Code, and the San Francisco Minimum Wage Ordinance, as well as any other claim which could have been asserted based upon the facts alleged in the action.

Before executing this Settlement Agreement and Release, all Early Consenters and Late Consenters were provided a copy of the full Agreement and the Notice attached as Exhibit D to

the Settlement Agreement, which Notice expressly set out the Release described above.

Payments to Early and Late Consenters

21. The $1,035, 000.00 payment to Early Consenters and Late Consenters will be distributed proportionally to the number of pay periods each Consenter worked in their respective claims period.  There are two types of Consenters, with different claims periods, to assure resolution of the claims alleged in this lawsuit from the maximum number of Sheriffs Supervisors who could allege these claims.  At the time of the settlement negotiations, only 73 Sheriffs Supervisors had submitted Opt-In forms, leaving additional potential claimants as to whom the Court did not have jurisdiction to dismiss their potential FLSA claims under a settlement agreement.

22. Accordingly, the parties agreed to allow additional Sheriff Supervisors to submit Opt-In Forms bringing them within the Court's jurisdiction to dismiss their FLSA claims when those Opt-In forms are filed herewith for the Court's approval.  Pursuant to this Agreement, 31 additional Sheriffs Supervisors (Late Consenters) timely submitted executed Opt-In Forms within the time period required by the Agreement in October 2015.  The "Settlement Agreement Consent and Release" forms executed by these 31 Late Consenters (and by the Early Consenters) state in relevant part: "I hereby consent or re-affirm my consent to participate in the lawsuit entitled Lisette Adams, et al. v. City and County of San Francisco, U.S. District Court Case No. 13-CV-04689 YGR, as a party Plaintiff to the FLSA Claims alleged therein."  These executed "Settlement Agreement Consent and Release" forms (executed by Early Consenters and Late Consenters) are attached as Exhibit F to the Agreement.

23. To ensure that Sheriffs Supervisors who had filed Opt-In forms early in the litigation were not prejudiced by adding Late Consenters to receive settlement proceeds, the parties agreed to two separate claims periods for each group, as detailed in Paragraph 9 of the Agreement.  Specifically:

A. Early Consenters' settlement claims period is October 9, 2010 to July 7, 2015. Agreement, ¶ 9(b).  October 9, 2010 is three years before plaintiffs filed this lawsuit on October 9, 2013, the maximum recovery period allowed by the FLSA statute of limitations for a

Complaint filed on that date. July 7, 2015 is the day the named Plaintiffs and the City Attorney reached agreement on the basic terms of the Agreement. Early Consenters are identified in Exhibit B to the Agreement, including their respective settlement share amounts and their respective "settlement weeks" on which their settlement share amounts were calculated. The average recovery for Early Consenters is $11,872.06 and the most common recovery for this group is $12,718.43.

   B. <u>Late Consenters</u>' settlement claims period is July 7, 2012 to July 7, 2015. Agreement, ¶ 9(c). July 7, 2015 is three years before the named Plaintiffs and the City attorney reached agreement on the basic terms of the Agreement, the maximum recovery period allowed by the FLSA statute of limitations for a Complaint filed on that date. Late Consenters are identified in Exhibit C to the Agreement, including their respective settlement share amounts and their respective "settlement weeks" on which their settlement share amounts were calculated. The average recovery for Late Consenters is $5,813.26, and the most common recovery for this group is $8,161.83.

24. Exhibits B and C to the Agreement note a "Minimum Settlement Share" and a "Final Settlement Share" because at the time the parties negotiated the Agreement, they did not know how many of the potential Late Consenters would execute Settlement Agreement Consent and Release Forms. Accordingly, the parties calculated a Minimum Settlement Share that each Early and Late Consenter would receive from the $1,035,000.00 amount if all known potential Late Consenters executed this form, with the understanding that if one or more potential Late Consenter did not execute this form, the amount of that potential Late Consenter's Minimum Settlement Share[s] would be distributed proportionally to Early Consenters and Late Consenters who did execute the form, which would result in an increased "Final Settlement Share" to each Early and Late Consenter. This potential adjustment to settlement shares was necessary to ensure that the entire $1,035,000.00 be distributed to Early and Late Consenters, without a reversion to the City.

25. Early Consenters and potential Late Consenters were provided a Notice alerting them to the opportunity to execute a Settlement Agreement Consent and Release form. The Notice,

attached as Exhibit D to the Agreement explained the terms of the Agreement, including the possibility of receiving a Final Settlement Share that could be greater than their Minimum Settlement Share. Each Early Consenter and potential Late Consenter was provided an individualized Settlement Agreement Consent and Release form, stating their Minimum Settlement Share. (Exh. F to Agreement.)

26. Ultimately, all known potential Late Consenters executed their individual Settlement Agreement Consent and Release form. Accordingly, the Minimum Settlement Share stated in the Settlement Agreement Consent and Release form is their Final Settlement share, and the amounts of those two Shares are the same in Exhibit C to the Agreement.

<u>Attorneys fees and costs</u>

27. As noted, the Agreement provides that the City will pay to Plaintiffs' counsel's law firm, Leonard Carder LLP, $250,000.00 as Plaintiffs' fees and costs of suit. Plaintiffs assert and the City does not dispute that Plaintiffs' costs in this case are $21,738.90 to date (primarily for expert damages calculations), leaving $228, 261.10 for attorneys fees.

28. The City does not dispute Plaintiffs' assertion that this is a reasonable amount to be allocated from this Agreement for attorneys fees and costs. Specifically, Plaintiffs assert:

    a. This is not a class action settlement, but the attorney fee portion of this Agreement constitutes 17.56% of the total settlement amount, which is well below the 25% benchmark which courts in the Ninth Circuit consider a presumptively reasonable amount of attoreneys fees in a class action settlement;

    b. All Early Consenters and Late Consenters recovering under this Agreement executed a Settlement Agreement Consent and Release which agrees to all the terms and conditions of the Agreement. (Exh. F to Agreement.) Before executing this Settlement Agreement and Release, all Early Consenters and Late Consenters were provided a copy of the full Agreement and the Notice attached as Exhibit D to the Settlement Agreement, both of which documents expressly set out the amount allocated from the settlement amount to reimburse attorneys fees and costs;

    c. The Leonard Carder Firm has spent more than 1,100 hours over the past 2.5

years actively litigating and settling this case, resulting in an average hourly rate of less than $207 per hour for all hours worked on the case.  This is far below the market rates for Leonard Carder attorneys.  For example, Plaintiffs' lead counsel Philip Monrad, a partner in the firm has, to date, spent more than 560 hours litigating and settling this case.  Market rates of $675/hour for Leonard Carder partners and $300-$400/hour for associates were held to be reasonable by a Northern District court in 2013.  See *Zoom Electric. V. International Brotherhood of Electrical Workers, Local 595*, 2013 WL 2297037 **4-5.

Lead Plaintiffs' service award.

29. The Agreement at ¶ 1(c) sets out the $5,000 service award for the three lead named Plaintiffs.  It also provides: "Plaintiffs acknowledge that these Named Plaintiffs spent a substantial amount of time and effort in initiating this Action, in assisting Plaintiffs' counsel in prosecuting this Action and in negotiating this Agreement, and will spend considerable additional time in implementing this Agreement.  Plaintiffs agree that this is a fair and equitable representative Plaintiff service award, and the City does not oppose this allocation of the Settlement Amount."

30. As noted, all Early Consenters  and Late Consenters recovering under this Agreement executed a Settlement Agreement Consent and Release which agrees to all the terms and conditions of the Agreement.  (Exh. F to Agreement.) Before executing this Settlement Agreement and Release, all Early Consenters and Late Consenters were provided a copy of the full Agreement and the Notice attached as Exhibit D to the Settlement Agreement, both of which documents expressly set out the allocation of $5,000 to each lead named Plaintiff as a service award.

The Agreement Should be Approved.

31. This Agreement was negotiated by counsel for both sides who are experienced in class action and FLSA collective action litigation who, after review and thorough analysis of extensive documentation and the pleadings filed in the case, were able to advise the parties, with the assistance of their own economics experts, to calculate the range of Plaintiffs' potential

- 9 -
STIP/ORDER APPROVING SETTLEMENT & DISMISSING CLAIMS                Case No. 4:13-cv-04689-YGR

recovery, including the possibility of small or no recovery for Plaintiffs.

32. This Agreement was negotiated over the course of multiple settlement conferences with the skillful assistance of Magistrate Corley, at which the parties were able to assess the risks and possible benefits of litigating this case to judgment.

33. This Agreement provides substantial recovery for each of the Early Consenters and Late Consenters who will recover under this Agreement. As noted above, the average recovery for Early Consenters is $11,872.06 and the most common recovery for this group is $12,718.43. The average recovery for Late Consenters is $5,813.26, and the most common recovery for this group is $8,161.83.

34. After being fully apprised of the terms of the Agreement, all Early Consenters and Late Consenters who will recover under this Agreement have signed individualized Settlement Agreement Consent and Releases which state their individual share of the Settlement Amount, the scope of their release of claims and their agreement that their claims, including their FLSA claims, be dismissed with prejudice.

35. No person's claim or potential claim is being dismissed by this Agreement other than the claims of Early Consenters and Late Consenters who have executed their individualized Settlement Agreement Consent and Release, all of which are filed herewith in Exhibit F to the Agreement.

36. This Agreement expressly admits no liability on the part of City for any claim alleged in the extant Complaint.

37. The San Francisco City Attorney and the Sheriff for the City and County of San Francisco attorney have recommended approval of this Agreement (Exh. 1) and the San Francisco Board of Supervisors and Mayor have approved it.

38. Based on the stipulations set out above, the parties submit that this is a fair and reasonable settlement of a bona fide dispute, and request that the Court approve the Agreement and enter stipulated judgment dismissing with prejudice all claims in the First Amended Complaint (Dkt. No. 11), including the collective action FLSA claims set out therein pursuant to 29 U.S.C. 216(b), and the claims asserted as class actions therein pursuant to Federal Rule of

Civil Procedure 23. *See Duran v. The Hershey Co.,* 2015 WL 4999511 (N.D. Cal. 2015).

Respectfully submitted,

LEONARD CARDER, LLP

DATED: April 8, 2016      By:     */s/ Philip C. Monrad*
Philip C. Monrad
Aaron Kaufmann
*Attorneys for Plaintiffs*

CITY AND COUNTY OF SAN FRANCISCO

DATED: April 8, 2016      By:     */s/* Jonathan Rolnick
Dennis J. Herrera
Jonathan Rolnick
Boriz Reznikov
*Attorneys for Defendant*

STIP/ORDER APPROVING SETTLEMENT & DISMISSING CLAIMS     Case No. 4:13-cv-04689-YGR

# [~~Proposed~~] ORDER

The Court has reviewed the Parties' Stipulation RE: Approval of Settlement Agreement and Dismissal with Prejudice and [Proposed] Order Thereon set out above, and the attachments thereto, including the Settlement Agreement and Release ("Settlement Agreement") attached as Exhibit 2 thereto, and in particular, the 103 individually executed Settlement Agreement Consents and Releases attached as Exhibit F to the Settlement Agreement.

Upon such review, the Court finds that the Settlement Agreement is a fair and reasonable settlement of a bona fide dispute. Accordingly, **IT IS HEREBY ORDERED THAT:**

1. **APPROVAL IS GRANTED** of the Settlement Agreement, including the releases contained therein, the payments to the Early Consenters and Late Consenters specified in Exhibit A to the Settlement Agreement, payment to plaintiffs' counsel for their attorneys fees and costs, and payment of service awards to each of the three named lead plaintiffs, as each such payment is specified in the Settlement Agreement**.**

2. **ALL PARTIES ARE BOUND** by the terms of the Settlement Agreement, including its Attachments.

3. **STIPULATED JUDGMENT IS ENTERED** in this action, *Adams et al v. City and County of San Francisco,* No. 4:13-CV-04689 YGR*,* and Plaintiffs' claims, including the FLSA claims of all Early Consenters and Late Consenters identified in Exhibit A, are hereby **DISMMISSED WITH PREJUDICE.**

4. The court reserves and retains exclusive and continuing jurisdiction over the above-captioned matter, the Settlement approved hereby, and the parties for the purpose of supervising the implementation, administration and interpretation of this Settlement Agreement and Release.

This Order terminates Docket Number 112.

**IT IS SO ORDERED.**

DATE: April 14, 2016

_____
HON. YVONNE GONZALEZ ROGERS
Judge of the United States District Court